UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DREAM CUSTOM HOMES,
INC.,

    Plaintiff,

v.                              CASE NO. 8:08-CV-1189-T-17AEP

MODERN DAY CONSTRUCTION,
INC., etc., et al.,

    Defendants.
_____/

ORDER

This cause is before the Court on:

Dkt. 78    Motion for Summary Judgment
Dkt. 86    Notice of Filing - Deposition
Dkt. 87    Notice of Filing - Deposition
Dkt. 90    Motion for Summary Judgment
Dkt. 91    Notice - Judicial Notice
Dkt. 92    Response
Dkt. 93    Notice of Filing
Dkt. 94    Response - Judicial Notice
Dkt. 95    Motion for Leave to File Reply
Dkt. 96    Response
Dkt. 100   Response
Dkt. 101   Motion for Summary Judgment
Dkt. 102   Response
Dkt. 103   Request for Oral Argument

The Amended Complaint (Dkt. 33), filed on July 20, 2009, includes Plaintiff Dream Custom Homes, Inc.'s claim for copyright infringement. Plaintiff Dream Custom Homes, Inc. alleges that Defendants copied and/or distributed Plaintiff's Copyrighted Work, and reproduced and/or distributed Plaintiff's Copyrighted Work by creating derivative floor plans and elevations which infringe Plaintiff's Copyrighted Work. Plaintiff attached copies of four Certificates of Registration to the Amended Complaint: 1)

Case No. 8:08-CV-1189-T-17AEP

Don Calais plans 2, Architectural or Technical Drawings, effective date of registration 9/7/2005; 2) Don Calais June, 2004, Architectural Work, effective date of registration 9/7/2005; 3) Don Calais plans 1, Architectural or Technical Drawings, effective date of registration 9/7/2005; and 4) Don Calais January 2002, Architectural Work, effective date of registration 9/7/2005. These collectively comprise the Copyrighted Work. Plaintiff has also attached a representative facsimile of the alleged Infringing Work, a six-page copy of plans and elevations prepared by Defendant PAR Custom Drafting, dated 2/7/2008, for a residence for Defendant Anthony Piarulli to be constructed by Defendant Modern Day Construction, Inc. at 11188 Kiska Wren Rd., in Hernando County, Florida.

In Count I, Plaintiff Dream Custom Homes, Inc. alleges:

15. In or around the ending months of 2007 and/or the beginning months of 2008, Defendants copied and/or distributed Plaintiff's Copyrighted Work and reproduced and/or distributed Plaintiff's Copyrighted Work by creating derivative floor plans and elevations (hereinafter the "Infringing Work") which infringe Plaintiff's Copyrighted Work and the '600, '601, '602, and '603 registrations alleged above.....

18. Defendants, without right, license or authority, copied the Copyrighted Work in creating the Infringing Work, which was published and distributed by Defendants, and Defendant Modern Day Construction, Inc. is using the Infringing Work to construct a home for Defendant Anthony Piarrulli at 1118 Kiska Wren Road, Royal Highlands Unit 5, Block 302, Permit Number 1221036, Hernando County, Florida.

2

Case No. 8:08-CV-1189-T-17AEP

In the Amended Complaint, Plaintiff Dream Custom Homes, Inc. seeks entry of a temporary and final injunction, the seizure and impoundment of all copies made or used in violation of Plaintiff's copyrights, the award of actual damages and additional profits of Defendants, or the award of statutory damages resulting from Defendants' infringement of Plaintiff's Copyrighted Work, and the award of attorney's fees and costs. Plaintiff has requested a jury trial.

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> "The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is

Case No. 8:08-CV-1189-T-17AEP

genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

In Herzog v. Castle Rock Entertainment, Inc., 193 F.3d 1241, 1247 (11th Cir. 1999), the Eleventh Circuit Court of Appeals states:

> Summary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works. See, Hoehling v. Universal City Studios, Inc., 618 F.2d 972, 977 (2d Cir.) (citing Arnstein v. Porter, 154 F.2d 464, 474 (2d Cir.1946)), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). However, non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar. Beal v. Paramount Pictures Corp., 20 F.3d 454 (11th Cir.1994), *cert. denied,* 513 U.S. 1062, 115 S.Ct. 675, 130 L.Ed.2d 607 (1994); Warner Bros, Inc. v. Am. Broadcasting Cos., 720 F.2d 231, 240 (2d Cir.1983) (quoting Hoehling, 618 F.2d at 977) (emphasis in original) (citation omitted), *aff'd* 530 F.Supp. 1187 (S.D.N.Y.1982), *after remand,* 654 F.2d 204 (2d Cir.), *aff'g and remanding,* 523 F.Supp. 611 (S.D.N.Y.1981).

The use of summary judgment has been approved in cases where: 1) because access has been established, the crucial issue is substantial similarity; 2) there may be substantial similarity with respect to the non-copyrightable elements of the two works compared; and 3) as to the protectable elements, there is substantial dissimilarity. Oravec v. Sunny Isles Ventures, L.C.,

4

Case No. 8:08-CV-1189-T-17AEP

527 F.3d 1218 (11th Cir. 2008).

Summary judgment is appropriate when the substantial similarity determination involves an architectural work that is merely a compilation of common design ideas. Intervest Const., Inc. v. Canterbury Estate Homes, Inc., 554 F.3d 914, 919-20 (11th Cir. 2008). The substantial similarity inquiry is "narrowed" when dealing with a compilation. Key Publications, Inc. v. Chinatown Today Publ'g Enter., Inc., 945 F.2d 509, 514 (2d Cir. 1991). When viewed through the lens of compilation analysis, only the original, and thus protected arrangement of spaces, elements and other staple building components should be compared. Intervest Construction at 919. In the case of architectural plans, "modest dissimilarities are more significant than they may be in other types of art works." Howard v. Sterchi, 974 F.2d 1272, 1276 (11th Cir. 1992).

II. Defendant's Motion for Summary Judgment

Defendant Modern Day Construction, Inc. seeks entry of summary judgment in favor of Defendant because, at the level of protected expression, the differences between the Don Calais plans and elevations and the Piarulli plans and elevations are so significant that no reasonable, properly instructed jury could find the works substantially similar. Defendant Modern Day Construction, Inc. requests that the Court find, as a matter of law, that the Don Calais plans 1 and Don Calais plans 2 are not substantially similar to the Piarulli plans.

Defendant Anthony Piarulli has filed a separate Motion for Summary Judgment (Dkt. 101) which seeks entry of summary judgment

Case No. 8:08-CV-1189-T-17AEP

in favor of Defendant Piarulli on the same basis as the Motion for Summary Judgment of Defendant Modern Day Construction, Inc. Defendants PAR Custom Drafting, Inc. and Phillip Roush have filed a separate Motion for Summary Judgment (Dkt. 90) which seeks entry of summary judgment on the same basis as the Motion for Summary Judgment of Defendant Modern Day Construction, Inc.  Any reference to Defendant Modern Day Construction, Inc.'s Motion for Summary Judgment also includes the Motions for Summary Judgment of the other Defendants.

Substantial similarity to show that an original work has been copied is not the same as substantial similarity to prove infringement.  Substantial similarity to prove infringement is a narrower inquiry than probative similarity, focused only on the elements of the copyrighted work that are protectable and whether whatever copying took place appropriated those elements.

Substantial similarity exists "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000).  "An 'average lay observer' presumably is an individual who, without any vested interest in the governing issue, is sufficiently informed and alert to identify precisely the differences in the competing designs, yet sufficiently informed and independent to fairly identify and assess the similarities; that is, at a minimum, neither an engaged expert nor an oblivious passerby." Arthur Rutenberg Homes, Inc. v. Maloney, 891 F.Supp. 1560, 1567 (M.D. Fla. 1995).

Case No. 8:08-CV-1189-T-17AEP

III. Plaintiff's Response

Plaintiff responds that there are disputed issues of material fact which preclude the entry of summary judgment as to the validity of Plaintiff's copyright registrations, and Defendant Modern Day's infringement of those registrations. As to the architectural works Don Calais June 2004 and Don Calais January 2002 and the architectural drawings Don Calais plans 2 and Don Calais plans 1, Plaintiff asserts that the copyrighted works are strikingly similar in protectable expression to the Piarulli plans and elevations.

IV. Statement of Facts

1. On August 29, 2005, Plaintiff Dream Custom Homes, Inc. submitted four applications for copyright registration: 1) Don Calais plans 2, Architectural or Technical Drawings; 2) Don Calais June, 2004, Architectural Work; 3) Don Calais plans 1, Architectural or Technical Drawings; and 4) Don Calais January, 2002, Architectural Work.

2. Don Calais plans 2 is registered as VA 1-311-600, and the effective date of registration is 9/7/2005. The registration indicates the date of first publication was 4/30/2004.

3. Don Calais June, 2004 is registered as VA-1-311-601, and the effective date of registration is 9/7/2005. The registration indicates the date of first publication was 4/30/2004.

4. Don Calais plans 1 is registered as VA-1-311-602, and

Case No. 8:08-CV-1189-T-17AEP

the effective date of registration is 9/7/2005. The registration form indicates the date of first publication was 11/30/2001.

5. Don Calais January 2002 is registered as VA-1-311-603, and the effective date of registration is 9/7/2005. The registration form indicates the date of first publication was 11/30/2001.

6. Don Calais plans 2 is a reverse floor plan of Don Calais plans 1 (Dkt. 92-12, p. 1). For example, the Garage and Master Bedroom are on the left side on the Don Calais plans 1, but are on the right side of the Don Calais plans 2. In addition, there are minor variations between Don Calais plans 1 and Don Calais plans 2. In the Don Calais plans 1, there are three windows on the rear wall of the Master Bedroom; in the Don Calais plans 2, there is a sliding door to the Lanai, the angle on the outside corner is squared-off, and two windows are added on the long outside wall. The two single-hung windows at the rear of the Family Room in the Don Calais plans 1 are replaced by a single ellipse-top window in the Don Calais plans 2. In Bath 2, the ten-foot ceiling in the Don Calais plans 1 is replaced by an eight-foot ceiling in the Don Calais plans 2, and a window and plant shelf are added. In the Kitchen of the Don Calais plans 1, the dishwasher is at the end of the counter; in the Don Calais plans 2 the dishwasher is moved to next to the sink, and the sink is moved over. Between Bedrooms 2 and 3, the "recessed arch" in the Don Calais plans 1 becomes "overhead niche" in the Don Calais plans 2, and an arch is added over the entrance.

7. Mr. Matt Burich, Vice President of Dream Custom Homes,

Case No. 8:08-CV-1189-T-17AEP

Inc., testified that he and his brother jointly designed the Don Calais in 2001 on a personal computer, using "3-D Home Architect." (Dkt. 86-1, pp. 48-50). When Plaintiff was ready to build the house, the floor plan was printed and taken to a draftsman to make blueprints. (Dkt. 86-1, pp. 53-54). The design was created as a work-for-hire for Dream Custom Homes, Inc. Mr. Burich testified that, in addition to the floor plan, the original features of the Don Calais design include the front entry, with two columns on each side and a turret-style roof, the quoins placed at the edge of the walls which form the exterior angle of the wall, the placement of exterior lights, and the placement and shape of the windows, including the faux window and regular window in the shower. (Dkt. 86-1, pp. 65-86). Mr. Burich testified the roof was a hip roof because a hip roof is stronger for hurricanes. (Dkt. 86-1, p. 65).

8. Mr. Matt Burich testified that the Don Calais design was marketed by construction of a model home in 2001, by inclusion in the 2001 "Parade of Homes," a newspaper supplement which showcases new home designs of local builders, other newspaper advertising, and Plaintiff's website, which was created in 2003. (Dkt. 86-1, pp. 38-39). While Plaintiff has not provided any brochures from 2001/2002, in his Affidavit, Mr. Burich alleges that Plaintiff began publishing the Don Calais plans 1 and Don Calais plans 2 "architectural work/technical drawings" via brochures in 2001/2002 (Dkt. 92-6).

9. Mr. Burich testified that the Don Calais II was created in 2003. (Dkt. 86-1, p. 55). Mr. Burich testified that the differences between the Don Calais and the Don Calais II include: 1) no pool bath in Don Calais II; the bath is between the second


Case No. 8:08-CV-1189-T-17AEP

and third bedrooms; 2) the 2 and ½ car garage in the Don Calais is a 2 car garage in the Don Calais II; 3) the dimensions are different; 4) the lanai is different. (Dkt. 86-1, pp. 56-58). Mr. Burich testified that the Don Calais is published on Plaintiff's website, but the Don Calais II has never been put on Plaintiff's website. (Dkt. 86-3, p. 20).

10. Mr. Matt Burich testified that he telephoned Defendant Anthony Piarulli and told him the plans for the Don Calais were copyrighted, and if Defendant Piarulli built Dream Custom Homes, Inc.'s house, there would probably be a problem. Mr. Burich further testified that he told Defendant Piarulli that Modern Day Construction, Inc. had been or was being sued for copyright infringement. (Dkt. 86-2, p. 39).

11. Mr. Matt Burich testified that the basis of Plaintiff's claim for knowing and intentional infringement on the Don Calais II copyright is that Defendant Piarulli came to Plaintiff's model home. (Dkt. 86-3, p. 22). Mr. Burich did not identify any facts supporting Plaintiff's claim that Defendant Modern Day Construction, Inc. had actual notice of Plaintiff's copyright. (Dkt. 86-3, pp. 21-22).

12. Dream Custom Homes, Inc. has built thirty-four Don Calais homes in Hernando County and Marion County, and one Don Calais II home. Seven Don Calais homes have been built in Citrus County. (Dkt. 87-3, p. 17).

13. In his deposition, Mr. Burich testified that the majority of the homes built by Plaintiff Dream Custom Homes, Inc. are homes that are generally based on Plaintiff's copyrighted

Case No. 8:08-CV-1189-T-17AEP

plans, but which are modified in various ways to fit the needs of each purchaser, such as by adding a bedroom or bathroom, or by bumping-out a wall. (Dkt. 87-1, pp. 11-14).

14. In 2005, Defendant Anthony Piarulli purchased the vacant lot on which Defendant Piarulli had his home built. Defendant Piarulli visited Plaintiff's model home center on at least two occasions, in December, 2006 and in January, 2008 (Dkt. 92-8). Defendant Piarulli testified that he visited two model homes constructed by Plaintiff, the Don Calais model at 8480 Spring Hill Drive, Spring Hill, FL, and the Don Calais model at 12377 Spring Hill Drive, Spring Hill, FL. Defendant Piarulli further testified that, by 2008, Defendant was more serious about having a home built. Defendant Piarulli testified that in 2008 he met with Plaintiff's employee, Tina Yuhasz, who provided some specific price information, what the price included and the costs for upgrades, but not a final price on the home Defendant proposed to build (Dkt. 92-7, p. 23). Defendant Piarulli also testified that Tina Yuhasz provided a contact person, Gina Hunt, for Defendant Piarulli to arrange financing.

15. Plaintiff Dream Custom Homes, Inc. has provided a "work-up" sheet on the home Plaintiff proposed to build for Defendant Piarulli, which includes specific price information, a specific design (Don Calais II), and a final proposed price of $170,034.00 (Dkt. 92-11). The work-up sheet indicates that the price does not include excavation or a well.

16. Defendant Anthony Piarulli testified that his best friend, Anthony Cresenzo, suggested that Defendant Piarulli contact Marc Delape, of Modern Day Construction, Inc., to build

Case No. 8:08-CV-1189-T-17AEP

Defendant Piarulli's home. Defendant Piarulli testified that he met with Marc Delape at Mr. Delape's home on Shorecrest Court, and told Mr. Delape what Defendant Piarulli wanted in a home, which was similar to Mr. Delape's residence (Dkt. 92-7, p. 12), only on a smaller scale. Defendant Piarulli denied bringing any materials with him to the meeting with Mr. Delape. (Dkt. 92-7, p. 11). Defendant Piarulli testified that Mr. Delape showed Defendant floor plans for a home Mr. Delape had constructed on Flock Avenue, for Julian Norris. Defendant Piarulli testified that he discussed prices and financing with Mr. Delape (Dkt. 92-7, pp. 13-14). After Defendant Piarulli and Mr. Delape agreed on some changes to the Flock and Shorecrest designs, the proposed plans were sent to PAR Custom Drafting, Inc. for a final plan to be drafted (Dkt. 92-7, pp. 16-17). Defendant Piarulli testified that changes were made to the master bedroom, rear lanai, and room dimensions. Defendant Piarulli testified that he signed a contract with Modern Day Construction, Inc. on February 14, 2008, for a total price of $170,000, which included excavation and a well.

17. Defendant Anthony Piarulli denied that Defendant Piarulli showed Mr. Delape of Defendant Modern Day Construction, Inc. any floor plans or brochures from Plaintiff Dream Custom Homes, Inc., nor did Defendant Piarulli tell Mr. Delape that Defendant Piarulli had visited Dream Custom Homes, Inc. before meeting with Mr. Delape (Dkt. 92-7, p. 31).

18. In his deposition, Mr. Marc Delape, president of Defendant Modern Day Construction, Inc., denied that he ever visited any model constructed by Plaintiff Dream Custom Homes, Inc. Mr. Delape denied that he had any computer software for

Case No. 8:08-CV-1189-T-17AEP

drafting plans (Dkt. 92-10, p. 28). Mr. Delape testified that he had plans for other houses that Mr. Delape had built on hand when he met with Defendant Piarulli (Dkt. 92-10, p. 30), and that changes were made to the plans to accommodate Defendant Piarulli's lot, then sent to PAR Custom Drafting, Inc. for a set of plans to be made for the proposed Piarulli home (Dkt. 92-7, p. 33).

19. Defendant Phillip Roush, president of Defendant PAR Custom Drafting, Inc., has operated that business since 1996 (Dkt. 92-9, p. 7). Defendant Roush uses Auto CAD to draw plans (Dkt. 92-9, p. 13). Defendant Roush testified that he drafted plans for Mr. Marc Delape's home on Shorecrest from a hand sketch that Mr. Delape provided (Dkt. 92-9, p. 24). Defendant Roush testified that the plans for the Julian house on Flock Avenue were based on the plans for Mr. Delape's home on Shorecrest (Dkt. 92-9, p. 26). Defendant Roush testified that he has never been to Plaintiff's model center (Dkt. 92-9, p. 27). Defendant Roush testified that Mr. Delape brought him a plan from Mr. Delape's previous customer "Julian", which was marked with changes (Dkt. 92-9, p. 24), and Defendant Roush provided plans to Mr. Delape which incorporated the changes. Defendant Roush did not meet with Defendant Piarulli; any discussion Defendant Roush had as to the Piarulli plans was only with Mr. Marc Delape (Dkt. 92-9, p. 23).

20. In his Affidavit (Dkt. 92-6), Mr. Matt Burich states that Defendant Modern Day Construction, Inc.'s personal residence, 8420 Shorecrest Court, Spring Hill, FL, 34608, is approximately 1.21 miles from a model home constructed by Plaintiff in accordance with Don Calais June 2004 architectural

13

Case No. 8:08-CV-1189-T-17AEP

work, located on Spring Hill Drive, Spring Hill, FL. Mr. Burich further states that Defendant PAR Custom Drafting, Inc.'s place of business, 12527 Spring Hill Dr., Spring Hill, FL, 34609 is approximately .38 miles from Plaintiff's model home center on Spring Hill Drive, Spring Hill, FL.

21. The plans for the Piarulli home are dated February 7, 2008.

22. Mr. Marc Delape obtained the permits to construct Defendant Anthony Piarulli's home at 11188 Kiska Wren Rd. The home was constructed between May and September, 2008.

V. Discussion

A. Scope of Plaintiff's Claims

In the Complaint, Plaintiff alleges that Defendants copied and reproduced the Copyrighted Work by creating derivative floor plans and elevations which infringe the Copyrighted Work and Plaintiff's registrations.

The Copyright Act grants the copyright holder "exclusive" rights to use and authorize the use of his work in five qualified ways, namely, 1) to reproduce the work, 2) to prepare derivative works, 3) to distribute copies of the work to the public, 4) to perform the work publicly and 5) to display the work publicly. Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 432-33 (1984). See 17 U.S.C. Sec. 106 (six exclusive rights).

"'Copying' is regularly used as a shorthand to refer to the

14

Case No. 8:08-CV-1189-T-17AEP

infringement of a copyright holder's exclusive rights under a copyright." <u>Country Kids 'N City Slicks, Inc. v. Sheen</u>, 77 F.3d 1280, 1284 (10th Cir. 1996). The "right to reproduce a copyrighted work" means the right to produce a material object in which the copyrighted work is duplicated, transcribed, imitated, or simulated in a fixed form from which it can be "perceived, reproduced or otherwise communicated either directly or with the aid of a machine or device." The right to prepare derivative works is broader than the right to reproduce a copyrighted work, in that reproduction requires fixation in copies, but the preparation of derivative works does not. See <u>House Report No. 94-1476</u>, Notes to 17 U.S.C. Sec. 106.

"To be an infringement, the "derivative work" must be "based on the copyrighted work," and the definition in section 101 [17 U.S.C. Sec. 101] refers to "a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed or adapted." To constitute a violation of Sec. 106(2), the infringing work must incorporate a portion of the copyrighted work in some form." <u>Id</u>.

Clause (3) of section 106 establishes the exclusive right of publication: The right to "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending." The copyright owner [has] the right to control the first public distribution of an authorized copy of [the] work, whether by sale, gift, loan, or some rental or lease arrangement. Any unauthorized public distribution of copies or phonorecords [of the copyrighted work]