## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DREAM CUSTOM HOMES, INC.**

     **Plaintiff,**

**v.**                       **Case No. 8:08-cv-1189-T-17AEP**

**MODERN DAY CONSTRUCTION, INC.,
a Florida Corporation, ANTHONY PIARULLI,
an individual, PAR CUSTOM DRAFTING,
INC., a Florida Corporation, and PHILLIP
ROUSH, an individual,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

     **THIS CAUSE** comes before the Court for consideration of Defendant Modern Day Construction, Inc.'s ("Defendant Modern Day") Motion for Attorney's Fees and Costs (Dkt. No. 116), Defendant Anthony Piarulli's ("Defendant Piarulli") Motion for Attorney's Fees and Costs (Dkt. No. 117), Defendants Phillip Roush ("Defendant Roush") and PAR Custom Drafting INC.'s ("Defendant PAR") Motion for Attorney's Fees and Costs (Dkt. No. 120)[1], and Plaintiff Dream Custom Homes, Inc.'s ("Defendant DCH") responses thereto. (Dkt. Nos. 125, 126, 127)  Also before the Court are Plaintiff's Motions for Review of Clerk's Order Taxing Costs and Staying

_____

[1] The Motions for Attorney's Fees and Costs filed by Defendants Modern Day and Piarulli are identical; the only difference is that "Modern Day" is replaced by "Piarulli" throughout Defendant Piarulli's motion.

Payment (Dkt. Nos. 138, 139, 140) and Defendants' joint response in opposition thereto (Dkt. No. 141). Upon consideration of all relevant filings, case law, and being otherwise fully advised, it is respectfully recommended that Defendants Modern Day, Piarulli, PAR, and Roush's Motions for Attorney's Fees and Costs (Dkt. Nos. 116, 117, 120) and Plaintiff DCH's Motions for Review of the Clerk's Order Taxing Mediation Costs (Dkt. Nos. 138, 139, 140) be **GRANTED** and that Plaintiff DCH's Motions to Stay Payment (Dkt. Nos. 138, 139, 140) be **DENIED**.

## I.  BACKGROUND[2]

On July 20, 2009, Plaintiff DCH filed a single-count Amended Complaint (Dkt. No. 33) which alleged copyright infringement. Plaintiff DCH claimed that Defendants copied and/or distributed Plaintiff's Copyrighted Work, and reproduced and/or distributed Plaintiff's Copyrighted Work by creating derivative floor plans and elevations which infringe Plaintiff's Copyrighted Work (Dkt. No. 33 at ¶¶15, 18). Plaintiff's Amended Complaint sought entry of a temporary and final injunction, the seizure and impound of all copies made or used in violation of Plaintiff's copyrights, the award of actual damages and additional profits of Defendants, or the award of statutory damages resulting from Defendants' infringement of Plaintiff's Copyrighted Work, and the award of attorney's fees and costs. (Dkt. No. 33 at 5-6). Plaintiff also requested a jury trial. (Dkt. No. 33 at 5). Plaintiff's Copyrighted Work is comprised of four Certificates of Registration: 1) Don Calais Plans 2, Architectural or Technical Drawings; 2) Don Calais June 2004, Architectural Work; 3) Don Calais plans 1, Architectural

---

[2] The facts in this section are taken from the Court's Summary Judgment Order which granted summary judgment in favor of Defendants. (Dkt. No. 110).

or Technical Drawings; and 4) Don Calais January 2002, Architectural Work. (Dkt. No. 33 at Ex. 2-5).

On May 7, 2010, Defendant Modern Day filed a Motion for Summary Judgment (Dkt. No. 78) alleging that the differences between the Don Calais plans and elevations and the Piarulli plans and elevations are so significant that no reasonable, properly instructed jury could find the works substantially similar.

Defendant Piarulli filed a separate Motion for Summary Judgment (Dkt. No. 101) which sought entry of summary judgment in favor of Defendant Piarulli on the same basis as Defendant Modern Day's motion for summary judgment. Defendants PAR and Roush also filed a separate motion for summary judgment (Dkt. No. 90) which sought entry of summary judgment on the same basis as Defendant Modern Day's Motion for Summary Judgment.

The Court entered summary judgment in favor of all Defendants on February 22, 2011, finding that the Piarulli plans and elevations were not substantially similar to the Copyrighted Works and that Defendants did not infringe Plaintiff's copyrights. (Dkt. No. 110 at 38).

The Court's findings were based on the following relevant facts:

1. On August 29, 2005, Plaintiff Dream Custom Homes, Inc. submitted four applications for copyright registration:

   1) Don Calais plans 2, Architectural or Technical Drawings; 2) Don Calais June, 2004, Architectural Work; 3) Don Calais plans 1, Architectural or Technical Drawing; and 4) Don Calais January, 2002, Architectural Work.

2.  Don Calais plans 2 is registered as VA 1-311-600, and the effective date of registration is 9/7/2005.  The registration indicates the date of first publication was 4/30/2004.

3.  Don Calais June, 2004 is registered as VA-1-311-601, and the effective date of registration is 9/7/2005.  The registration indicates the date of first publication was 4/30/2004.

4.  Don Calais plans 1 is registered as VA-1-311-602, and the effective date of registration is 9/7/2005.  The registration form indicates the date of first publication was 11/30/2001/.

5.  Don Calais January 2002 is registered as VA-1-311-603, and the effective date of registration is 9/7/2005.  The registration form indicates the date of first publication was 11/30/2001.

6.  Don Calais plans 2 is a reverse floor plan of Don Calais plans 1 (Dkt. 92-12 at 1).  For example, the Garage and Master Bedroom are on the left side of the Don Calais plans 1, but are on the right side of the Don Calais plans 2.  In addition, there are minor variations between Don Calais plans 1 and Don Calais plans 2.  In the Don Calais plans 1, there are there windows on the rear wall of the Master Bedroom; in the Don Calais plans 2, there is a sliding door to the Lanai, the angle on the outside corner is squared-off, and two windows are added on the long outside wall.  The two single-hung windows at the rear of the Family Room in the Don Calais plans 1 are replaced by a single ellipse-

4

top window in the Don Calais plans 2.  In Bath 2, the ten-foot ceiling in the Don Calais plans 1 is replaced by an eight-foot ceiling in the Don Calais plans 2, and a window and plant shelf are added.  In the Kitchen of the Don Calais plans 1, the dishwasher is at the end of the counter; in the Don Calais plans 2 the dishwasher is moved next to the sink, and the sink is moved over.  Between Bedrooms 2 and 3, the "recessed arch" in the Don Calais plans 1 becomes "overhead niche" in the Don Calais plans 2, and an arch is added over the entrance.

7. Mr. Matt Burich, Vice President of Dream Custom Homes, Inc., testified that he and his brother jointly designed the Don Calais in 2001 on a personal computer using "3-D Home Architect." (Dkt. 86-1 at. 48-50).  When Plaintiff was ready to build the house, the floor plan was printed and taken to a draftsman to make blueprints.  (Dkt. 86-1 at pp.53-54).  The design was created as a work-for-hire for Dream Custom Homes, Inc.  Mr. Burich testified that, in addition to the floor plan, the original features of the Don Calais design include the front entry, with two columns on each side and a turret-style roof, the quoins placed at the edge of the walls which form the exterior angle of the wall, the placement of exterior lights, and the placement and shape of the windows, including the faux window and regular window in the shower.  (Dkt. 86-1 at 65-86).  Mr. Burich testified the roof was a hip roof because a hip roof is stronger for hurricanes.  (Dkt. 86-1 at 65).

8.  Mr. Matt Burich testified that the Don Calais design was marketed by construction of a model home in 2001, by inclusion in the 2001 "Parade of Homes," a newspaper supplement which showcases new home designs of local builders, other newspaper advertising, and Plaintiff's website, which was created in 2003.  (Dkt. 86-1 at 38-39).  While Plaintiff has not provided any brochures from 2001/2002, in his Affidavit, Mr. Burich alleges that Plaintiff began publishing the Don Calais plans 1 and Don Calais plans 2 "architectural work/technical drawings" via brochures in 2001/2001.  (Dkt. 92-6).

9.  Mr. Burich testified that the Don Calais II was created in 2003.  (Dkt. 86-1 at 55).  Mr. Burich testified that the differences between the Don Calais and the Don Calais II include:  1) no pool bath in Don Calais II; the bath is between the second and third bedrooms; 2) the 2 and ½ car garage in the Don Calais is a 2 car garage in the Don Calais II; 3) the dimensions are different; 4) the lanai is different.  (Dkt. 86-1 at 56-58).  Mr. Burich testified that the Don Calais is published on Plaintiff's website, but the Don Calais II has never been put on Plaintiff's website.  (Dkt. 86-3 at 20).

10. Mr. Matt Burich testified that he telephoned Defendant Anthony Piarulli and told him the plans for the Don Calais were copyrighted, and if Defendant Piarulli built Defendant DCH's house, there would probably be a problem. Mr. Burich further testified that he told Defendant Piarulli that Defendant

Modern Day had been or was being sued for copyright infringement.  (Dkt. 86-2 at 39).

11. Mr. Matt Burich testified that the basis of Plaintiff's claim for knowing and intentional infringement on the Don Calais II copyright is that Defendant Piarulli came to Plaintiff's model home.  (Dkt. 86-3 at 22).  Mr. Burich did not identify any facts supporting Plaintiff's claim that Defendant Modern Day had actual notice of Plaintiff's copyright.  (Dkt. 86-3 at 21-22).

12. Plaintiff has built thirty-four Don Calais homes in Hernando County and Marion County, and one Don Calais II home.  Seven Don Calais homes have been built in Citrus County.  (Dkt. 87-3 at 17).

13. In his deposition, Mr. Burich testified that the majority of the homes built by Plaintiff are homes that are generally based on Plaintiff's copyrighted plans, but which are modified in various ways to fit the needs of each purchaser, such as by adding a bedroom or bathroom, or by bumping-out a wall.  (Dkt. 87-1 at 11-14).

14. In 2005, Defendant Piarulli purchased the vacant lot on which he built his home.  Defendant Piarulli visited Plaintiff's model home center on at least two occasions, in December, 2006 and in January, 2008 (Dkt. 92-8).  Defendant Piarulli testified that he visited two model homes constructed by Plaintiff, the Don Calais model at 8480 Spring Hill Drive, Spring Hill, FL, and the Don Calais model at 12377 Spring Hill Drive, Spring Hill, FL.

Defendant Piarulli further testified that, by 2008, he was more serious about having a home built.  Defendant Piarulli testified that in 2008 he met with Plaintiff's employee, Tina Yuhasz, who provided some specific price information, what the price included and the costs for upgrades, but not a final price on the home Defendant Piarulli proposed to build.  (Dkt. 92-7 at 23).  Defendant Piarulli also testified that Tina Yuhasz provided a contact person, Gina Hunt, for Defendant Piarulli to arrange financing.

15. Plaintiff has provided a "work-up" sheet on the home Plaintiff proposed to build for Defendant Piarulli, which includes specific price information, a specific design (Don Calais II), and a final proposed price of $170,034.00. (Dkt. 92-11).  The work-up sheet indicates that the price does not include excavation or a well.

16. Defendant Anthony Piarulli testified that his best friend, Anthony Cresenzo, suggested that Defendant Piarulli contact Marc Delape, of Defendant Modern Day, to build Defendant Piarulli's home.  Defendant Piarulli testified that he met with Marc Delape at Mr. Delape's home on Shorecrest Court, and told Mr. Delape what Defendant Piarulli wanted in a home, which was similar to Mr. Delape's residence (Dkt. 92-7 at 12), only on a smaller scale.  Defendant Piarulli denied bringing any materials with him to the meeting with Mr. Delape.  (Dkt. 92-7 at 11).  Defendant Piarulli testified that Mr. Delape showed Defendant floor plans for a home Mr. Delape had constructed on

8

Flock Avenue, for Julian Norris.  Defendant Piarulli testified that he discussed prices and financing with Mr. Delape.  (Dkt. 92-7 at 13-14).  After Defendant Piarulli and Mr. Delape agreed on some changes to the Flock and Shorecrest designs, the proposed plans were sent to Defendant PAR for a final plan to be drafted (Dkt. 92-7 at 16-17).  Defendant Piarulli testified that changes were made to the master bedroom, rear lanai, and room dimensions.  Defendant Piarulli testified that he signed a contract with Defendant Modern Day on February 14, 2008, for a total price of $170,000, which included excavation and a well.

17. Defendant Piarulli denied that he showed Mr. Delape of Defendant Modern Day any floor plans or brochures from Plaintiff, nor did Defendant Piarulli tell Mr. Delape that Defendant Piarulli had visited Plaintiff before meeting with Mr. Delape.  (Dkt. 92-7 at 31).

18. In his deposition, Mr. Marc Delape, president of Defendant Modern Day, denied that he ever visited any model constructed by Plaintiff.  Mr. Delape denied that he had any computer software for drafting plans (Dkt. 92-10 at 28).  Mr. Delape testified that he had plans for other houses that Mr. Delape had built on hand when he met with Defendant Piarulli (Dkt. 92-10 at 30), and that changes were made to the plans to accommodate Defendant Piarulli's lot, then sent to Defendant PAR, for a set of plans to be made for the proposed Piarulli home.  (Dkt. 92-7 at 33).

19. Defendant Roush, president of Defendant PAR, has operated that business since 1996.  (Dkt. 92-9 at 7).  Defendant Roush uses Auto CAD to draw plans. (Dkt. 92-9 at 13).  Defendant Roush testified that he drafted plans for Mr. Delape's home on Shorecrest from a hand sketch that Mr. Delape provided (Dkt. 92-9 at 24).  Defendant Roush testified that the plans for the Julian house on Flock Avenue were based on the plans for Mr. Delape's home on Shorecrest. (Dkt. 92-9 at 26).  Defendant Roush testified that he has never been to Plaintiff's model center. (Dkt. 92-9 at 27).  Defendant Roush testified that Mr. Delape brought him a plan from Mr. Delape's previous customer "Julian," which was marked with changes, (Dkt. 92-9 at 24), and Defendant Roush provided plans to Mr. Delape which incorporated the changes.  Defendant Roush did not meet with Defendant Piarulli; any discussion Defendant Roush had as to the Piarulli plans was only with Mr. Delape.  (Dkt. 92-9 at 23).

20. In his Affidavit (Dkt. 92-6), Mr. Matt Burich states that Defendant Modern Day's personal residence, 8240 Shorecrest Court, Spring Hill, FL, 34608, is approximately 1.21 miles from a model home constructed by Plaintiff in accordance with Don Calais June 2004 architectural work, located on Spring Hill Drive, Spring Hill, FL.  Mr. Burich further states that Defendant PAR's place of business, 12527 Spring Hill Dr., Spring Hill, FL, 34609 is approximately 0.38 miles from Plaintiff's model home center on Spring Hill

10

Drive, Spring Hill, FL.

21. The plans for the Piarulli home are dated February 7, 2008.

22. Mr. Delape obtained the permits to construct Defendant Piarulli's home at 11188 Kiska Wren Rd.  The home was constructed between May and September, 2008.

## II.  RELIEF SOUGHT

Defendants Modern Day, Piarulli, PAR, and Roush (collectively "Defendants"), as the prevailing parties, now seek to recover attorney's fees and costs pursuant to the Copyright Act, 17 U.S.C. § 505, against Plaintiff DCH.  (Doc. No. 116, 117, 120).  Plaintiff DCH seeks review of the clerk's order taxing costs for mediation and seeks a stay of payment of costs and fees until Plaintiff exhausts all appeals.  (Dkt. No. 138, 139, 140).

## III.  LEGAL STANDARDS

Section 505 of the Copyright Act authorizes an award of fees in the discretion of the court and provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

The Copyright Act gives the Court broad discretion to determine whether a party is the prevailing party and whether the amount of the fees is reasonable.  *See Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 155-156 (3d Cir. 1986).  Although attorney's fees are awarded in the trial

11

court's discretion, they are the rule rather than the exception and should be awarded routinely. *Arista Records, Inc. v. Beker Enterprises, Inc.*, 298 F.Supp.2d 1310, 1316 (S.D. Fla. 2003).  In *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 526, 114 S.Ct. 1023 (1986), the Supreme Court approved the boundaries of the court's discretion established by the Third Circuit in *Lieb*.  "The legislative history of § 505 provides no support for treating prevailing plaintiffs and defendants differently with respect to the recovery of attorney's fees."  *Id*. at 523.

In determining whether to award attorney's fees under § 505, the district court "should consider not whether the losing party can afford to pay the fees but whether imposition of fees will further the goals of the Copyright Act,"  *i.e.*, "by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure that the boundaries of copyright law are demarcated as clearly as possible in order to maximize the public exposure to valuable works."  *Mitek Holdings, Inc. v. Arce Engineering Co., Inc.,* 198 F.3d 840, 842 (11th Cir. 1999) (quoting *Fogerty*, 510 U.S. at 526-27).  Nonexclusive factors a court is to consider in determining whether to award prevailing party attorney fees under the Copyright Act include: 1) frivolousness; 2) motivation; 3) objective unreasonableness (both in factual and in legal components of the case); and 4) the need in particular circumstances to advance considerations of compensation and deterrence.  *Fogerty*, 510 U.S. at 534; *Mitek Holdings*, 198 F.3d at 842-843.

The Eleventh Circuit emphasized that the " 'only preconditions to an award of fees is that the party receiving the fee be the 'prevailing party' and that the fee be reasonable.' "  *Mitek Holdings, Inc. v. Arce Engineering Co.,* 198 F.3d 840, 842 (11th Cir. 1999) (quoting *Original*

*Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 832 (11th Cir. 1982).  In *Mitek Holdings*, the Eleventh Circuit found that the copyright holder's "good faith in bringing its suit was not determinative of the issue of attorney's fees." *Id.* (citing *Sherry Mfg. Co. v. Towel King of Florida, Inc.,* 822 F.2d 1031, 1034 (11th Cir. 1987).

Additionally, the Copyright Act provides the court with discretion to award costs.  17 U.S.C. § 550.  However, the Supreme Court has noted that 28 U.S.C. § 1920 embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against a losing party.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494.  Therefore, an award of costs pursuant to Fed. R. Civ. P. 54 in excess of those permitted by Congress under 28 U.S.C. § 1920 constitutes an abuse of discretion.  *Maris Distributing Co. v. Anheuser-Busch, Inc.,* 302 F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford*, 482 U.S. at 445).  With these standards in mind, the Court turns to the facts in this case.

## IV.  DISCUSSION

### A. Defendants' Motions for Attorney's Fees

### 1. Prevailing Party

Defendants are clearly the prevailing parties because summary judgment was granted in their favor.  *See Haughton v. SunTrust Bank Inc.,* 403 Fed. Appx.458, 459 (11th Cir. 2010).  Plaintiff does not challenge Defendants' status as the prevailing parties.  In determining whether an award of fees is appropriate in this case, the Court must consider the rest of the non-exclusive list of factors suggested by the Supreme Court.  *See Mitek Holdings*, 198 F.3d at 842 (citing *Fogerty*, 510 U.S. at 526-27).

13

**2. Frivolousness**

Two elements must be proven for a valid copyright infringement claim: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). If plaintiff is unable to show direct proof of copying, copying may be established by showing that defendants had access to the copyrighted work and that the works are "substantially similar." *Id*. At 1248. If a plaintiff cannot show access, he may prevail by showing that the works are "strikingly similar." *Id*.

Under the Copyright Act, access requires proof of "a reasonable opportunity to view" the work in question. *Herzog*, 193 F.3d at 1249. The Court has already determined that Plaintiff was able to show that Defendants had access to the Copyrighted Works through a chain of events. (Dkt. No. 110 at 23). However, the Court ultimately concluded that the Piarulli plans were not substantially similar to the Copyrighted works, stating that "[t]he average lay observer would not recognize the Piarulli plans and elevations to be misappropriated from the Don Calais plans 2 and elevations because of the many differences, and because the overall design is not sufficiently unique." (Dkt. No. 110 at 38).

Defendants contend that Plaintiff's claim was frivolous because Plaintiff acknowledged there were many dissimilarities between the two plans and Plaintiff should have been aware of other cases in the Eleventh Circuit which should have indicated to Plaintiff that this lawsuit should not have been brought. (Dkt. No. 116 at 5-6, Dkt. No. 117 at 5-6, Dkt. No. 120 at 6-7). In the present case, Plaintiff's copyright claims did not fall to the level of frivolousness. Frivolousness, in copyright cases, is usually found in cases in which the claimant does not even

own the copyright in question or has granted a license to the alleged infringer but sues for infringement nonetheless. *See Amadasun v. Dreamworks, LLC*, 359 F.Supp.2d 1367, 1373 (N.D.GA.2005); *see also Lowe v Loud Records*, 2004 WL 527831, *3 (E.D.Pa. Nov. 20, 2003), *aff'd*, 126 Fed. Appx. 545 (3d Cir. 2005).

In the present case, the Court found that Plaintiff held a valid copyright in the Copyrighted Works. (Dkt. No. 110 at 20-21). Therefore, based on existing caselaw, Plaintiff's copyright claim was not frivolous. However, a lack of frivolousness does not preclude an award of attorney's fees in favor of Defendants. *See Sherry Mfg. Co. v. Towel King of Florida Inc.,* 822 F.2d 1031, 1034 (11th Cir. 1987).

### 3. Motivation

Defendants assert that Plaintiff's copyright action was motivated by desire to "achieve financial gain for itself . . . to cause financial loss to the Defendant[s]" and that "these motivations were fueled by vindictiveness for losing a potential customer and the desire to eliminate a competing builder in Hernando County." (Dkt. No. 116 at 6). Additionally, Defendants PAR and Roush claim that Plaintiff's failure to engage in pre-suit discussions and Plaintiff's delay in naming PAR and Roush as Defendants demonstrate an improper motive for the lawsuit. (Dkt. No. 120 at 5-6).

In opposition, Plaintiff contends that the motivation for the lawsuit was "to protect its interest in its registered copyrighted works." (Dkt. No. 125 at 7). Further, Plaintiff asserts that it did engage in pre-suit discussions by informing Defendant Piarulli that "its plans were copyrighted and that if Defendant Piarulli built Plaintiff's house 'there would be a problem.' "

15

(Dkt. No. 125 at 7).  Plaintiff also alleges that it attempted settlement with Defendant Modern Day but that settlement was futile because Defendant Modern Day "refused to agree to stop building Plaintiff's copyrighted floor plans."  (Dkt. No. 125 at 8).  Lastly, Plaintiff does not provide any explanation for Defendants PAR and Roush's claim of delay.

There is little evidence in the record to support Defendants' claim that Plaintiff had an improper motivation for bringing its copyright action.  Nothing in the record reveals indication that Plaintiff's motivation was to harm Defendants and Defendants can only point to a chain of events which it asserts leads to the conclusion that Plaintiff "was miffed that Mr. Piarulli took his business elsewhere and sued him, Modern Day and the other Defendants to get even."  (Dkt. No. 116 at 7).  At best, the chain of events serve as circumstantial evidence to prove Plaintiff's motivation, and even then, the evidence is weak.  Therefore, the record does not contain sufficient evidence to show that Plaintiff was motivated by vengeance and a desire to hurt Defendants.

Defendants PAR and Roush rely heavily on *Oravec v. Sunny Isles Luxury Venture, L.C.*, 2009 WL 6337121 (S.D. Fla., Jan. 12, 2009), for their allegation that Plaintiff had improper motivations in bringing the copyright action.  Defendants PAR and Roush's reliance on *Oravec* is misplaced.  The facts which lead to the *Oravec* court's finding that Plaintiff in that case had an improper motive are substantially different than the facts of the present case.  In *Oravec*, Plaintiff did not initiate his lawsuit until over 2 years after the date of his discovery of the alleged infringement.  *Id*. at *7.  Additionally, Plaintiff in that case admitted that the scope of his design

16

in the overall design of the building in that case was minor. *Id*. Based on these two facts, the *Oravec* court found that Plaintiff was motivated, in part, by commercial gain. *Id*.

Here, Plaintiff commenced its lawsuit 4 months after Defendant Piarulli entered into a contract to build his home with Defendant Modern Day. This is substantially less than the delay in *Oravec*. Further, in the present case, there was no admission by Plaintiff of any limited role in the creation of the Piarulli plans. Based on these distinctions, it would be improper to come to the same conclusion as in *Oravec*.

As to Plaintiff's alleged failure to engage in pre-suit discussions, it appears that Plaintiff gave Defendants notice that it intended to enforce its copyright. Further, Plaintiff avers that it attempted settlement with Defendant Modern Day to no avail and that it previously settled a lawsuit without any monetary compensation. Accordingly, based upon the record, Plaintiff's behavior does not indicate an improper motivation for this lawsuit.

### 4. Objective Reasonableness of Plaintiff's Claim

Defendants PAR and Roush rely heavily on the Court's granting of summary judgment to support their position that Plaintiff's infringement claim was objectively unreasonable. (Dkt. No. 120 at 8). Defendant Modern Day claims the lawsuit was frivolous from the very outset. (Dkt. No. 116 at 8). In addition to these claims, all four Defendants allege that Plaintiff admitted there were numerous and significant differences between the Piarulli home and Plaintiff's copyrighted works. (Dkt. No. 116 at 9; Dkt. No. 120 at 10).

Plaintiff asserts that this matter had merit from its inception and continues to have merit. (Dkt. No. 125 at 9). Plaintiff claims that factually, this case is reasonable because Defendant

17

Piarulli "went so far as to begin to pursue the financing for the construction of Plaintiff's *The Don Calais* model home" before abruptly changing his mind and deciding to build with Defendant Modern Day. (Dkt. No. 125 at 9). In addition to these allegations, Plaintiff also contends that Defendant Modern Day has been sued on other occasions for copyright infringement and that this "habit evidence and evidence of willful intent could have vastly changed the dynamics of this matter, should Plaintiff have been successful in its defense of Defendants' Motions for Summary Judgment." (Dkt. No. 125 at 10). Lastly, Plaintiff contends that its copyright claim was legally reasonable because it was trying to advance "The Inverse Ratio Rule" which is a 9th Circuit rule that lowers the degree of similarity required where proof of access is shown[3]. (Dkt. No. 125 at 13).

In light of the Court's previous findings in the summary judgment order, it is apparent that Plaintiff's copyright claim is objectively unreasonable. Specifically, the Court noted that it is true that the floor plan of the Piarulli plans and the Don Calais plans are visually similar in some respects, and the general layout is the same; however, there are *significant differences* (emphasis added):

1. The second bathroom is in a different place. In the Piarulli home, the second bathroom is between bedrooms 2 and 3, not next to the family room.

2. The closets in bedrooms 2 and 3 differ in shape and size between the two floor plans.

3. In the Piarulli home, there are two walk-in closets between the master

---

[3] The Court's summary judgment order did not address Plaintiff's Inverse Ratio Rule argument.

bedroom and master bathroom and there is no access to a walk-in closet within the master bathroom; instead that space is a study with access from the living room.

4. The lanai differs in placement, shape and size between the Piarulli home and the Don Calais plans 2.

5. In the Piarulli home, the rear wall of the master suite and the lanai are a continuous line, so that the lanai is beside the master suite. In the Don Calais, the lanai is behind the master suite as well as next to it.

6. The differences in the lanai creates a difference in the rear roof lines between the two plans.

7. The dimensions of many rooms differ.

8. In the Piarulli home, the garage door is on the outside wall, so that the front law is much larger and includes a walkway to the front entrance, and there is no courtyard, giving a different look to the Piarulli home compared to the Don Calais when viewed from the exterior.

9. The four elevations on the two plans are different.

(Dkt. No. 110 at 33-34).[4]

Plaintiff has identified certain features of the Don Calais plans as distinctive. Specifically, Plaintiff points to the front entrance, the quoins, the placement of the exterior lights, and the

---

[4] These are just some of the differences between the two plans, and are taken from the Court's summary judgment order. A full listing of the differences can be found on pp. 26-32 of the summary judgment order.

placement and shape of windows.  However, the Court has already concluded that some of these features that Plaintiff describes as distinctive are commonly found in other homes built in the same market. (Dkt. No. 110 at 36).  Regarding the exterior lighting, the Court found that the placement of the lights at each side of the window were utilitarian features or those dictated by external factors or mere functionality, therefore, it could not be afforded copyright protection. (Dkt. No. 110 at 36).  Further, the Court held that there were significant differences between the Piarulli home and the Don Calais plans as to the other features that Plaintiff identified as distinctive. (Dkt. No. 110 at 37).  For example, the Court determined that "the Piarulli home has quoins at the two corners of the front wall of the garage and a three-window arrangement on the master bath wall, without quoins.  The windows of the Piarulli home are a different shape than the windows of the Don Calais.  The Don Calais plans show quoins at two corners of the garage wall, and quoins marking the corners of the master bath wall which shows one window." (Dkt. No. 110 at 37).

Significantly, the Court concluded that based on these differences, the Don Calais plans are not sufficiently unique in design for an overall similarity in "look and feel" to outweigh the significant differences between the plans.  (Dkt. No. 110 at 38).  Thus, the Court held that the Piarulli plans and elevations are not substantially similar to the protectable elements of the Don Calais plans and elevations, by stating that "*[t]he average lay observer* would not recognize the Piarulli plans and elevations to be misappropriated from the Don Calais plans and elevations because of the many differences, and because the overall design is not sufficiently unique." (emphasis added)  (Dkt. No. 110 at 38).

20

As such, if the average lay observer should have been able to recognize that misappropriation did not occur, then Plaintiff should have known there was no copyright infringement.   Plaintiff was apparently aware, and admitted that there were numerous dissimilarities between the plans.  Nonetheless, Plaintiff proceeded with this lawsuit.   As noted by this Court and other courts, there are a finite number of ways to design the floor plan for a three bedroom, two-bath split-plan home.  (Dkt. No. 110 at 34-35) (citing *Howard v. Sterchi*, 974 F.2d 1272 (11th Cir. 1993); *Intervest Construction, Inc. v. Canterbury Estate Homes, Inc.*, 554 F. 3d 914 (11th Cir. 2008)).  Simply stated, the Court has already determined that the Piarulli plans and Don Calais plans have significant differences with respect to alleged distinctive features of the Don Calais.  (Dkt. No. 110 at 37-38).  Therefore, Plaintiff should have been aware that, although there are similarities with the general overall layout of the Piarulli plans and the Don Calais plans, the significant differences between the plans would preclude a finding of copyright infringement.

**5.  Need to Advance Considerations of Compensation and Deterrence**

Defendants PAR And Roush contend that Plaintiff's claim did nothing to further the goals of the Copyright Act and that copyright holders should be deterred from initiating costly litigation without first attempting non-judicial resolution.  (Dkt. No. 120 at 12).  Defendant Modern Day claims that Plaintiff's claim has been frivolous from the outset and frivolous claims need to be deterred through an award of attorney's fees.

Plaintiff contends that Defendant Piarulli "had access to Plaintiff's copyrighted works and began this domino effect of litigation and should not be shielded simply by being victorious."

(Dkt. No. 125 at 14).  Additionally Plaintiff claims that Defendants Modern Day and PAR are known in the community as "copy cats," therefore, "the prosecution of this litigation initially seemed to advance the U.S. Copyright Act and attempted to calm the thievery amongst local builders."  (Dkt. No. 125 at 14).

Plaintiff's claim, although not frivolous within the context of copyright cases, is unreasonable, and such conduct should be deterred.  In particular, an award of fees in this case will hopefully deter other individuals from bringing lawsuits when they know that there are numerous differences between their copyrighted work and an allegedly infringing work which would outweigh any similarity between the works.  Further, some courts have commented on the importance of making sure that prevailing defendants receive their fees because that is the only means they have of recovering their fees.  "When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong.  Without the prospect of such an award the party might be forced into a nuisance settlement or deterred altogether from exercising his rights."  *Diamond Star Building Corp. v. Freed*, 30 F.3d 503, 506 (4th Cir. 1994).  Therefore, an award of fees to Defendants would likely serve the interests of compensation and deterrence in this case.

**6.  Final Balancing**

When the circumstances of the present case are taken into consideration, the Court finds that imposing attorneys' fees will further the goals of the Copyright Act.  Imposing fees on Plaintiff would discourage the filing of suits containing objectively unreasonable claims and

22

encourage meritorious defenses.  Accordingly, it is respectfully recommended that Defendants'

Motions for Attorney's Fees and Costs be **GRANTED**.

**B.  Amount of Fees Awarded Must Be Reasonable**

In finding that an award of fees under the Copyright Act is appropriate here, the Court is

mindful that the amount of fees must be reasonable.  Defendant Modern Day was represented by

Mr. Frank A. Miller and Mr. Carl F. Yeich of Caglianone, Miller & Anthony, P.A.  The total

amount of fees sought by Defendant Modern Day for work in this case that did not go to trial is

$17,659.75.  (Dkt. No. 116 at 2).  Defendant Anothony Piarulli was represented by Mr. George

G. Angeliadis of The Hogan Law Firm, LLC.  The total amount of fees sought by Defendant

Piarulli for work in this case that did not go to trial is $11,200.00.  (Dkt. No. 117 at 2).

Defendants PAR and Roush were represented by J. Robert McCormack of Lewis, Brisbois,

Bisgaard & Smith LLP.  The total amount of fees sought by Defendants PAR and Roush for work

in this case that did not go to trial is $20,774.50.  (Dkt. No. 120 at 2).  At a hearing held on July

6, 2011, Plaintiff's counsel objected to the amount of the fees sought and the hourly rates.

However, Plaintiff's counsel stated she thought the rates and amounts sought by Defendants were

reasonable.

In calculating a reasonable attorneys' fee award, the Court must consider the number of

hours reasonable expended on this litigation, together with the customary fee charged in this

community for similar legal services.  *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933

(1983).  These two figures are then multiplied together resulting in a sum called the "lodestar."

Under certain circumstances, the lodestar may be adjusted in order to reach a more appropriate

attorney's fee.  *See Blum v. Stenson*, 465 U.S 886, 888, 104 S.Ct. 1541 (1984).  Further, the Court is itself an expert on the question of fees and may make an award based upon its own experience.  *Norman v. Housing Authority of City of Montgomery*, 836 F. 2d 1292, 1303 (11th Cir. 1988) (citing *Davis v. Board of School Commissioners of Mobile County*, 526 F. 2d 865, 868 (5th Cir. 1976)[5].

Defendant Modern Day's counsel charged a maximum of $150.00 per hour for attorney work, Defendant Piarulli's counsel charged $250.00 per hour for attorney work, and Defendants PAR and Roush's counsel charged $225.00 for attorney work.  The Court finds that the hourly rates and total amounts sought by all Defendants are reasonable.  The Middle District has found that an hourly rate of $300.00 in copyright litigation is reasonable.  *See Clever Clovers v. Southwest Florida Storm Defense, LLC*, 554 F.Supp.2d 1303, 1314 (M.D. Fla. 2008); *see also Palmer v. Braun*, 2005 WL 3093409, *4 (M.D. Fla. Nov. 18, 2005).  Therefore, the Court finds that: 1) Defendants PAR and Roush are entitled to an award of $20,774.50 in attorney's fees, at an hourly rate of $225.00 per hour for attorney work; 2) Defendant Modern Day is entitled to an award of $17,659.75 in attorney's fees, at an hourly rate of $150.00 per hour for attorney work; and 3) Defendant Piarulli is entitled to an award of $11,200.00, at an hourly rate of $250.00 per hour for attorney work.

---

[5] Decisions of the Fifth Circuit rendered prior to October 1, 1981, are binding on the Eleventh Circuit.  *See Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

### C.  Plaintiff's Motions for Review of Clerk's Order Taxing Costs

On March 24, 2011, the Clerk of the Middle District Court taxed costs against Plaintiff in the amount of $3,892.26 for Defendant Modern Day's costs, $525.00 for Defendants PAR and Roush's costs, and $525.00 for Defendant Piarulli's costs.  (Dkt. No. 129-131).  The three motions Plaintiff filed on this matter (Dkt. Nos. 138-140) will be addressed as a single motion because they are nearly identical; the only difference is in the title of the documents.

Plaintiff avers that the Clerk improperly taxed costs for mediation expenses in the amount of $525.00.  (Dkt. No. 138 at 2).  In support of this claim, Plaintiff contends that although Defendants may be entitled to recover costs, mediation costs cannot be awarded to Defendants because it is not explicitly provided for in 28 U.S.C. § 1920.

The Court finds Plaintiff's argument persuasive because there is no statutory or other authority to support an award of mediation costs, and mediation costs are not recoverable under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.  Further, existing case law from this circuit and other circuits on the issue have held that mediation fees are not taxable as costs.  *See e.g. Bates v. Islamorda*, 2007 WL 2113586, *17 (S.D. Fla. July 23, 2007); *Cook Children's Med. Ctr. v. N. England PPO Plan of Gen. Consol. Mgmt., Inc.,* 491 F.3d 266, 275 (5th Cir. 2007); *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 530 (5th Cir.2001) (disallowing mediation fees as not authorized under 28 U.S.C. § 1920); *Brisco-Wade v. Carnahan*, 297 F.3d 781, 782-83 (8th Cir.2002); Sea *Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 (9th Cir.2001).  Therefore, it is respectfully recommended that Plaintiff's Motions For Review of Clerk's Order Taxing Costs be **GRANTED** and the amount of costs taxed to Plaintiff reduced

by $525.00 as to each Defendant.  The new amounts that are taxable to Plaintiff as costs are as follows:  1) $3,367.26 as to Defendant Modern Day; and 2) $0.00 as to Defendants PAR, Roush, and Piarulli.

### D.  Plaintiff's Motions to Stay Payment[6]

Plaintiff seeks a motion staying payment of fees and costs until Plaintiff's appeals have been exhausted.  (Dkt. No. 138 at 4).  Plaintiff does not cite any authority or advance any legal argument as to why it is entitled to a stay of payment.  Further, the Copyright Act does not authorize a stay of enforcement of an award of costs.  Therefore, it is respectfully recommended that Plaintiff's request for stay of payment as to all fees and costs is **DENIED.**

## V.  CONCLUSION

Upon consideration of the foregoing, the undersigned respectfully recommends that:

1.  Defendants' Motions for Attorney's Fees and Costs (Dkt. Nos. 116, 117, 120) be **GRANTED** in the amounts as stated herein;

2.  Plaintiff's Motions for Review of Clerk's Order Taxing Costs (Dkt. Nos. 138-140) be **GRANTED** as stated herein;

3.  Plaintiff's Motions for Stay of Payment (Dkt. Nos. 138-140) be **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 12th day of July, 2011.

---

[6] Plaintiff's requests to stay payment were included in its motions to review the clerk's order taxing costs.  The Court will treat Plaintiff's request to stay payment as a separate motion.

_____

ANTHONY E. PORCELLI
United States Magistrate Judge

Copies furnished to:

Counsel of record


**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:

Hon. Elizabeth A. Kovachevich

Counsel of Record